UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK,

    Plaintiff,

v.                                                  CASE NO. 8:16-cv-2867-T-23AAS

MARVIN I. KAPLAN, et al.,

    Defendants.
_____/

## **ORDER**

In 2012, Regions Bank sued several of the defendants in a related action and asserted an array of contract claims (including some under the Uniform Commercial Code) and tort claims.[1] On April 18, 2016, Judge Kovachevich granted summary judgment for Regions on the contract claims but denied summary judgment on the tort claims. An exhibit (Doc. 837-1 in the 2012 action) shows that R1A Palms owes Regions $4,247,647.21; that TNE owes $2,126,620.21; that MKI owes $1,483,864.79; and that BNK owes $206,897.36. Judge Kovachevich has not yet directed the clerk to enter judgment on the contract claims. As part of the punitive-damages discovery on the tort claims, in May 2016 the defendants produced approximately 13,000 pages of financial records, which purportedly reveal the allegedly fraudulent transfers over which Regions sues (Doc. 48) in this action.

---

[1] Case 8:12-cv-1837-EAK (M.D. Fla.).

Several months after Regions began the 2012 action, Marvin Kaplan allegedly directed a series of fraudulent transfers intended to hinder Regions' ability to satisfy a future judgment. On October 22, 2012, MKI allegedly transferred to another entity, MIKA, "at least" $858,661.21 in money and other assets. (Doc. 48 at 6) Three years later, Marvin Kaplan allegedly orchestrated another series of purportedly fraudulent transfers. In 2015, Marvin Kaplan allegedly caused Devonshire Park Holdings to disburse $630,107.566 to R1A, TNE, BNK, and MKI. (Doc. 48 at 7–9) Immediately after receiving the money, the four entities allegedly transferred the money to Kathryn Kaplan, Marvin's wife. (Doc. 48 at 7–8) Although Marvin argues that each transfer constitutes a lawful loan to Kathryn, Marvin produces no note and shows no evidence that Kathryn repaid a loan. Regions contends that each transfer is actually fraudulent, constructively fraudulent, or both. (Doc. 48 at 4–8)

Nine months after the defendants produced the documents that purportedly evidence fraudulent transfers and nearly four months after commencing this action, Regions moves (Doc. 35) to preliminarily enjoin the defendants' "further transfers." Magistrate Judge Sansone recommends (Doc. 93) a preliminary injunction. The defendants timely object (Doc. 102) and argue that equity bars the requested injunction, that Regions fails to show an imminent and irreparable injury, and that Regions fails to show that the balance of equities favors an injunction.[2]

---

[2] The defendants identify several other purported defects in the motion and the report and recommendation. Because equity disfavors the injunction, because Regions fails to show clearly that Regions will suffer an irreparable and imminent injury without an injunction, and because the

(continued...)

- 2 -

**DISCUSSION**

Regions requests this injunction:

> (a) M. Kaplan, the Kaplan Entities, Advanta, and Mainstar, together with their officers, agents, servants, employees, and attorneys, are prohibited from transferring, negotiating, granting a lien or interest in, or otherwise conveying any right, title or interest in any asset, personal or real property, in the amount of $932,634.45 plus interest from MKI, MIKA, or the IRA.
>
> (b) The Kaplan Parties, together with their officers, agents, servants, employees, and attorneys, are prohibited from transferring, negotiating, granting a lien or interest in, or otherwise conveying any right, title or interest in any asset, personal or real property, in the amount of $742,229.39, plus interest.
>
> (c) The Kaplan Parties, together with their officers, agents, servants, employees, and attorneys, are prohibited from conducting any further transfers that are actually or constructively fraudulent as to Regions.

(Doc. 36-1 at 8)

**1. In this circumstance, equity disfavors the requested injunction.**

Section 726.108, Florida Statutes, authorizes an injunction against "further disposition by the debtor or a transferee." Citing *Grupo Mexicano de Desarollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), the defendants argue that equity disfavors an injunction intended to ensure a plaintiff's ability to collect on a future money judgment. After the creditor plaintiffs in *Grupo Mexicano* learned that the debtor defendant intended to transfer more than $100 million in assets to other creditors, the creditor plaintiffs requested a preliminary injunction and argued that

---

²(...continued)
requested injunction violates Rule 65(d), Federal Rules of Civil Procedure, this order declines to address the defendants' other arguments.

- 3 -

the intended transfers would "frustrate any judgment" the creditor plaintiffs might obtain. 527 U.S. at 312. The district court enjoined the prospective transfers, and the Second Circuit affirmed. 527 U.S. at 312–313.

Reversing the lower court, *Grupo Mexicano* holds that an unsecured general creditor without a money judgment cannot successfully invoke "equitable assistance in the collection of a legal debt." 527 U.S. at 325. *Grupo Mexicano* explains that a creditor without a judgment historically "had no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property." 527 U.S. at 319–20. But *Grupo Mexicano* expressly declines to decide whether the Uniform Fraudulent Transfer Act "alter[s] the common-law rule that a general contract creditor has no interest in his debtor's property." 527 U.S. at 323 n.7.

Section 726.108 of the Florida Uniform Fraudulent Transfer Act permits a "creditor" to void an actually or constructively fraudulent transfer "to the extent necessary to satisfy the creditor's claim." Under Section 726.102, a creditor means "a person who has a claim," and a claim includes a "right to payment, whether or not the right is reduced to judgment." But under the statute, the availability of a preliminary injunction remains "subject to applicable principles of equity." As *Grupo Mexicano* and *Rosen v. Cascade Intern., Inc.*, 21 F.3d 1520 (11th Cir. 1994) (Tjoflat, J.), explain, equity precludes an asset freeze intended to ensure that a defendant can satisfy a future money judgment. *See Rosen*, 21 F.3d at 1531 ("[P]reliminary

injunctive relief freezing a defendant's assets in order to establish a fund with which to satisfy a potential judgment for money damages is simply not an appropriate exercise of a federal district court's authority.").

**2. Regions fails to show clearly an imminent and irreparable injury.**

Even if the Uniform Fraudulent Transfer Act countenances a preliminary injunction that freezes a defendant's assets to secure a future money judgment, an injunction under the Uniform Fraudulent Transfer Act requires meeting the typical preliminary-injunction requirements. *See, e.g.*, *TD Bank, N.A. v. Pearl*, 891 F.Supp.2d 103 (D.D.C. 2012) (Kollar-Kotelly, J.) (denying motion for preliminary injunction); *In re Gedda*, 2015 WL 1406905 (Bankr. M.D. Fla. Mar. 24, 2015) (Jennemann, J.). An "extraordinary and drastic" remedy, a preliminary injunction issues only if the moving party shows clearly (1) that the moving party likely will succeed on the merits, (2) that the moving party will suffer an imminent and irreparable injury without the injunction, (3) that the harm to the moving party outweighs the harm to the enjoined party, and (4) that the injunction causes no injury to the public that outweighs the anticipated benefit to the moving party. *Pine v. City of West Palm Beach, Fl.*, 762 F.3d 1262, 1268 (11th Cir. 2014); *Texas v. Seatrain Intern., S.A.*, 518 F.2d 175, 179 (5th Cir. 1975).

Regions' motion for a preliminary injunction devotes three conclusory sentences to the irreparable-injury requirement:

> Kaplan Parties have engaged in numerous fraudulent transfers to secrete assets from Regions' reach. M Kaplan's *modus operandi* is to

- 5 -

> swiftly move funds to K. Kaplan and MIKA and leave no asset in his
> or Kaplan Entities' names. There is a substantial risk that absent a
> preliminary injunction, Kaplan Parties will continue the fraudulent
> diversion, leaving Regions without an equitable remedy afforded by
> FUFTA.

(Doc. 35 at 24) For several reasons, Regions fails to show clearly that imminent and irreparable injury will result absent a preliminary injunction. First, an "irreparable injury" means an injury that a monetary judgment cannot remedy. *Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fl.*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."); *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987) (citing *Sampson v. Murray*, 415 U.S. 61 (1974)). The disputes in the 2012 action and this action involve only money; a money judgment can compensate Regions' injury.

Second, Regions argues that the possibility that the defendants might transfer assets to hinder the ability of Regions to collect a future money judgment warrants a preliminary injunction, but Section 726.109(2) affords Regions a legal remedy that gravitates strongly against the prospect of an irreparable injury. Under that section, Regions can obtain a money judgment against Kathryn Kaplan for the amount of the fraudulent transfers. If Kathryn Kaplan fraudulently transfers the money elsewhere, Regions can obtain a money judgment against the transferee. Marvin Kaplan testifies (Doc. 41-7 at 56) that his wife "has her own money," which suggests that Kathryn Kaplan might fully answer a money judgment against her if Regions ultimately prevails on the fraudulent-transfer claims.

Third, a preliminary injunction requires an "imminent" injury. *Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000). Several of the allegedly fraudulent transfers occurred half a decade ago, and the remaining transfers occurred two years ago. Despite extensive discovery, Regions cites no evidence of any purportedly fraudulent transfer more recent than 2015. Although several deposition or trial excerpts of Marvin Kaplan's testimony suggest that Marvin Kaplan conducted the 2012 and the 2015 transfers to hinder Regions' ability to satisfy a future judgment (e.g., Doc. 41-7 at 36, at which Kaplan states that a "problem" with MKI — the "lawsuit against Regions" — induced Kaplan to transfer assets to MIKA), no evidence cited by Regions shows or permits reasonably inferring that the defendants intend an imminent transfer to hinder Regions' ability to collect a future judgment.

Fourth, Regions waited five months after learning about the allegedly fraudulent transfers to begin this action and waited another three months to request a preliminary injunction. Because a preliminary injunction "is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be heard on the merits," a delay of "even . . . a few months" in requesting a preliminary injunction militates mightily against a finding of imminent and irreparable injury. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (internal citations omitted). Although reviewing the 13,000 documents and conducting "due diligence" undoubtedly required some time, Regions fails to explain persuasively the protracted delay in requesting a preliminary injunction, which delay belies Regions'

claim of an imminent and irreparable injury.  In this circumstance, Regions fails to

show clearly that an imminent and irreparable injury will result absent an injunction.

**3. Regions fails to show clearly that the balance of equities favors an injunction.**

Even if the Florida Uniform Fraudulent Transfer Act permits an asset freeze

intended to satisfy a future money judgment and even if Regions shows imminent

and irreparable injury, Regions fails to show clearly that the balance of equities favors

the injunction.  In fact, Regions' motion contains one conclusory sentence about the

balance of equities.  (Doc. 25 at 26, which states that "[t]here is no harm to

Defendants if the Court grants injunctive relief.")  The defendants (1) correctly

observe that Regions "fails to explain why or how . . . the balance of hardships tips in

its favor" and (2) correctly state that a preliminary injunction might threaten the

defendants' ability to conduct business.  (Doc. 44 at 8; Doc. 102 at 14, which

observes that the requested injunction effectively imposes a receivership on the

defendants)  In this circumstance, Regions fails to show clearly that the balance of

equities favors the requested injunction.

**4. The requested injunction lacks specificity.**

Under Rule 65(d), Federal Rules of Civil Procedure, an injunction "must . . .

describe in reasonable detail — and not by referring to the complaint or other

document — the act or acts restrained or required."  *See Schmidt v. Lessard*,

414 U.S. 473, 476 (1974) (observing that the "specificity provisions of Rule 65(d) are

no mere technical requirements . . . basic fairness requires that those enjoined receive

explicit notice of precisely what conduct is outlawed.") As stated in Rule 65(d), an injunction governs "only the following who receive actual notice of it":

>(A) the parties;
>(B) the parties' officers, agents, servants, employees, and attorneys; and
>(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Because the violation of an injunction implies intrusive enforcement and sometimes punitive consequences and especially because an injunction affects a class of persons not necessarily privy to the dispute that resulted in the injunction, fairness and due process require an injunction to identify precisely the "restrained or required" conduct and to inform a reasonable but otherwise uninformed reader of the injunction how to regulate conduct — what to do or what not to do — to conform to the injunction. Similarly, an injunction must describe the "restrained or required conduct" in a manner that permits a judge asked to enforce the injunction to speedily and confidently determine whether some oppugned conduct offends the injunction and, if so, to design, impose, and enforce a remedy with assurance that any violation is contrary to the manifest and unmistakable terms of the injunction and is, therefore, knowing and willful. As an injunction increases in ambiguity and breadth and taxes increasingly a judge's interpretative ability, the inclination and legal authority of a judge either to require compliance or to punish non-compliance decreases at least proportionally. In other words, an injunction should not leave a reasonable person with a good-faith doubt about whether some act is "restrained or required." An act not explicitly either "restrained or required" is necessarily an act implicitly permitted

- 9 -

or excused; an injunction that "restrains or requires" an act not readily ascertainable by a reasonable person from the words of the injunction is not a judicially enforceable order.

Regions' requested injunction explicitly bars a transfer of either $932,634.45 or $742,229.39 but includes no bar of a transfer of any other amount. By application of plain and unmistakable language, the injunction permits a transfer greater or lesser than $932,634.45 and greater or lesser than $742,229.39. *See United Dominion Indus., Inc. v. United States*, 532 U.S. 822, 836 (2001) (explaining that the "mention of some implies the exclusion of others not mentioned"). In other words, the amount of the two enjoined transfers is specified down to the last penny — or is it? To each of the only two specifically prohibited transactions the proposed injunction appends the phrase "plus interest." But the injunction says nothing about the calculation of this interest: Interest at what rate? Interest beginning when? Simple interest or compound interest? In other words, even the two apparently specified amounts are not usefully specified because neither is determinable with confident precision at the moment of some future transaction. If the injunction is enforced as proposed, an enjoined transaction of $932,634.45 and an enjoined transaction of $742,229.39 remained enjoined only for the fleeting instant before the first cent of interest accrued and the amount of the enjoined transactions instantaneously and forever ticked upward; after that, nothing.

Also, the defendants state that Regions' requested injunction "seeks to enjoin the use of fungible money." (Doc. 102 at 14)  In *Noventa Ocho LLC v. PBD Props. LLC*, 284 Fed.Appx. 726 (11th Cir. July 3, 2008), which compels denying Regions' request to enjoin the defedants' transfer of money from a bank account, an order preliminarily enjoined the defendants' transferring $1,255,722 from an identified account at Fifth-Third Bank.  *Noventa Ocho* vacates the injunction because the moving party failed to show "specific and identifiable funds."  284 Fed.Appx. at 728.  The plaintiff's "identification of a specific *amount* of money to which it claims entitlement [did] not relieve [the plaintiff] of the obligation to show the existence of specific funds subject to an injunction."  *Noventa Ocho*, 284 Fed.Appx. at 728 (italics original). Unlike the plaintiff in *Noventa Ocho*, Regions fails to identify any account that belongs to a defendant and fails to state the account's balance.  (Typically a litigant will avoid this and other difficulties by proposing an injunction that, for example, requires that a party maintain an unencumbered balance of a stated amount, say $932,634.45, in a specified account, procure a letter of credit for a stated amount against which the creditor can draw money on the occurrence of a stated event of default, segregate and maintain assets of a stated value under the custody and control of a third party, pay into the registry of the court a stated amount, or accomplish another suitable expedient that permits both security for the creditor and a reasonably workable economic life for the debtor.)  Lacking a fit definition of the enjoined transactions the proposed injunction, owing to an excess of breadth, either amounts to a total freeze

- 11 -

of all activity by an affected person or, owing to the creation of an ever-elusive target, amounts to no freeze of any ascertainable activity by an affected person. The former is a usurpation and the latter is a futility; neither is a lawful exercise of the judicial power.

Although Rule 65(c) requires that the moving party post a security bond sufficient "to pay the costs and damages sustained" by a wrongfully enjoined party, Regions argues that it need not post a security bond in this action. (Doc. 35 at 25; Doc. 99) In addition to barring the transfer from a bank account of "fungible money," the requested injunction bars transferring real property, personal property, and any other asset, but Regions' failure to identify the defendants' real property, personal property, and other assets prevents an informed determination of the security-bond amount sufficient to compensate against a wrongful injunction.

Also, Regions states that the defendants failed to show a "specific transaction[] that would be wrongfully precluded if a preliminary injunction issues." (Doc. 99 at 17) But the defendants, some of which own and manage real estate, state that the defendants regularly transfer money to pay sales taxes, property taxes, Florida Power & Light bills, water and sewage bills, and insurance bills. (Doc. 102 at 17) The defendants request a security bond totaling $1,489,016.24. (Doc. 102 at 17–18) The disparity in the security-bond amount evidences fundamental confusion about the precise conducted enjoined, which confusion results directly from ambiguity. Despite Regions' insistence that the requested injunction bars only a "continuing

of all activity by an affected person or, owing to the creation of an ever-elusive target, amounts to no freeze of any ascertainable activity by an affected person. The former is a usurpation and the latter is a futility; neither is a lawful exercise of the judicial power.

Although Rule 65(c) requires that the moving party post a security bond sufficient "to pay the costs and damages sustained" by a wrongfully enjoined party, Regions argues that it need not post a security bond in this action. (Doc. 35 at 25; Doc. 99) In addition to barring the transfer from a bank account of "fungible money," the requested injunction bars transferring real property, personal property, and any other asset, but Regions' failure to identify the defendants' real property, personal property, and other assets prevents an informed determination of the security-bond amount sufficient to compensate against a wrongful injunction.

Also, Regions states that the defendants failed to show a "specific transaction[] that would be wrongfully precluded if a preliminary injunction issues." (Doc. 99 at 17) But the defendants, some of which own and manage real estate, state that the defendants regularly transfer money to pay sales taxes, property taxes, Florida Power & Light bills, water and sewage bills, and insurance bills. (Doc. 102 at 17) The defendants request a security bond totaling $1,489,016.24. (Doc. 102 at 17–18) The disparity in the security-bond amount evidences fundamental confusion about the precise conducted enjoined, which confusion results directly from ambiguity. Despite Regions' insistence that the requested injunction bars only a "continuing

of all activity by an affected person or, owing to the creation of an ever-elusive target, amounts to no freeze of any ascertainable activity by an affected person. The former is a usurpation and the latter is a futility; neither is a lawful exercise of the judicial power.

Although Rule 65(c) requires that the moving party post a security bond sufficient "to pay the costs and damages sustained" by a wrongfully enjoined party, Regions argues that it need not post a security bond in this action. (Doc. 35 at 25; Doc. 99)  In addition to barring the transfer from a bank account of "fungible money," the requested injunction bars transferring real property, personal property, and any other asset, but Regions' failure to identify the defendants' real property, personal property, and other assets prevents an informed determination of the security-bond amount sufficient to compensate against a wrongful injunction.

Also, Regions states that the defendants failed to show a "specific transaction[] that would be wrongfully precluded if a preliminary injunction issues." (Doc. 99 at 17)  But the defendants, some of which own and manage real estate, state that the defendants regularly transfer money to pay sales taxes, property taxes, Florida Power & Light bills, water and sewage bills, and insurance bills. (Doc. 102 at 17)  The defendants request a security bond totaling $1,489,016.24. (Doc. 102 at 17–18)  The disparity in the security-bond amount evidences fundamental confusion about the precise conducted enjoined, which confusion results directly from ambiguity. Despite Regions' insistence that the requested injunction bars only a "continuing

fraudulent transfer," the defendants reasonably fear that the requested injunction might bar a transfer required by state law or county ordinance (for example, the remitting of a sales tax to the State of Florida) and might bar a business expense paid with "fungible money" (for example, an FPL bill).

Finally, the requested injunction, which "prohibit[s] . . . conducting any further transfers that are actually or constructively fraudulent as to Regions," constitutes an impermissible "obey-the-law" injunction. *See, e.g.*, *S.E.C. v. Goble*, 682 F.3d 934, 950 (11th Cir. 2012) (holding that an "obey-the-law" injunction violates Rule 65(d)). The Florida Uniform Fraudulent Transfer Act prohibits a fraudulent transfer; the clause quoted above merely duplicates the statute. In the three decades after Florida's adoption of the Uniform Fraudulent Transfer Act, thousands of decisions have interpreted or applied the statute. Because the defendants' compliance with the injunction requires "compendious knowledge" of the decisions, the defendants "ha[ve] no way of understanding [their] obligations under the injunction." *Goble*, 682 F.3d at 934. In sum, the requested injunction fails for several reasons to apprise the defendants of the precise conduct enjoined.

## CONCLUSION

Under *Grupo Mexicano* and *Rosen*, equity disfavors an asset freeze intended to ensure that a defendant can satisfy a future money judgment. Although *Grupo Mexicano* reserves the question whether the Uniform Fraudulent Transfer Act displaces the common law prohibition in equity on an asset freeze, the Florida

Uniform Fraudulent Transfer Act remains "subject to the applicable principles of equity." In this circumstance, the requested injunction impermissibly freezes the defendants' assets so that the plaintiff can attempt to satisfy a money judgment, if and when entered.

Even if the Florida Uniform Fraudulent Transfer Act permits the requested asset freeze, Regions fails to show clearly either irreparable and imminent injury or a balance-of-the-equities that favors the injunction. In 2012 and 2015, the defendants purportedly conducted a series of fraudulent transfers to hinder Regions' ability to collect a future money judgment. Regions first received information about the transfers in May 2016 but waited until January 30, 2017, to request an injunction against the defendants' "further transfers." And Regions submits no evidence of a fraudulent transfer after 2015. The months-long delay in requesting an injunction counsels strongly against a finding of imminent and irreparable injury. Additionally, Section 726.109(2) of the Florida Uniform Fraudulent Transfer Act permits Regions to obtain a money judgment against a "subsequent transferee" if the defendants persist in the allegedly fraudulent transfers of money. Also, Regions fails to show clearly that the balance of equities favors the requested injunction. Finally, the injunction violates Rule 65(d). The defendants' objection (Doc. 102) is **SUSTAINED** to the extent stated above, the report and recommendation (Doc. 93) is **DECLINED**, the motion (Doc. 35) for a preliminary injunction against the defendants' potential transfers is **DENIED**, and Regions' objection (Doc. 99) to the

- 14 -

magistrate's recommendation that Regions post a security bond is **OVERRULED AS MOOT**.

ORDERED in Tampa, Florida, on August 11, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE