UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK,

    Plaintiff,

v.                                  CASE NO. 8:16-cv-2867-T-23AAS

MARVIN I. KAPLAN, et al.,

    Defendants.
_____/

**ORDER**

More than six years ago in case 8:12-cv-1837-EAK (M.D. Fla.), Regions Bank sued Marvin Kaplan, R1A Palms, Triple Net Exchange, BNK Smith, and MK Investing. Except for MK Investing, which Marvin's self-directed IRA owns for Marvin's benefit, Marvin and his wife Kathryn jointly own the companies. Regions alleged the Kaplans' liability for a check-kiting scheme that cost Regions several million dollars. In addition to suing the three companies jointly owned by Kathryn and Marvin, which companies the parties refer to as the "Kaplan entities," Regions sued Lighthouse Points and Smith Advertising & Associates. The Kaplan parties counter-claimed against Regions and cross-claimed against Gary Smith, Lucy Smith, and Smith Advertising & Associates; the Smith parties defaulted.

After a fifteen-day bench trial in May 2016, the presiding judge in the earlier action entered judgment on November 15, 2017 for Regions and against R1A Palms

for $4,311,369.79; against Triple Net Exchange for $2,158,589.63; against MK Investing for $1,506,183.93; and against BNK Smith for $213,008.96. These money judgments for Regions resolved the contract claims; Kaplan and the Kaplan entities prevailed on Regions' tort claims in the earlier action.

Through discovery in the earlier action, Regions learned in April or May 2016 that the Kaplan entities wrote Kathryn seven checks in 2015:

> a) On October 9, 2015, R1A Palms wrote Kathryn a check for $286,994.86.
>
> b) On February 28, 2015, R1A Palms wrote Kathryn a check for $187,000.
>
> c) On January 15, 2015, Triple Net Exchange wrote Kathryn a check for $10,500.
>
> d) On January 8, 2015, Triple Net Exchange wrote Kathryn a check for $49,500.
>
> e) On February 27, 2015, Triple Net Exchange wrote Kathryn a check for $71,000.
>
> f) On October 9, 2015, Triple Net Exchange wrote Kathryn a check for $109,759.67.
>
> g) On October 9, 2015, BNK Smith wrote Kathryn a check for $27,768.47.

(Doc. 131-11 at 15, 20, 24, 31, 37, and 49) Kathryn deposited the checks, which total $742,523, in her personal accounts.

Suing under Sections 726.105(1)(a), (b) and Section 726.106, Florida Statutes, Regions alleges (Doc. 48) that each transaction is both actually and constructively fraudulent. The Kaplans respond that each transaction is a "loan" to Kathryn and that Kathryn satisfied the debts by paying the attorney's fee that the Kaplan entities incurred in the earlier action. Also, Regions requests a declaration that MIK

Advanta (or "MIKA"), the corporation through which Marvin manages the assets in Marvin's self-directed IRA, succeeded to the liability of MK Investing, the corporation through which Marvin formerly managed the assets in Marvin's self-directed IRA. Additionally, Regions contends that MIKA is a "mere continuation" of MK Investing and that a "de facto merger" between MIKA and MK Investing subjects MIKA to liability for MK Investing's debt. Finally, Regions claims that MK Investing fraudulently transferred assets to MIKA.

Regions and the Kaplan parties move (Docs. 130 and 134, respectively) for summary judgment on the claims for fraudulent transfer, "successor liability," "de facto merger," and "mere continuation."

## DISCUSSION

Several factual disputes, including the amount and the characterization of Kathryn's payment to the law firm that represented the Kaplan entities in the earlier action, preclude summary judgment for either party on the fraudulent-transfer claims against Kathryn, but several arguments warrant brief attention. First, Regions argues that Kathryn waived the "affirmative defense" of payment by failing to include the defense in her answer. In fact, Kathryn invokes the payment to the law firm not as an affirmative defense but rather to show that she provided "value" for the loans and that the loans are not fraudulent.* Second, Kathryn cites the May 2016 payment to the law firm as proof that she fully repaid her debt to the Kaplan entities, but the law

---

* Section 726.104 imputes no value to an unperformed promise.

- 3 -

firm billed the Kaplan entities no more than (and perhaps less than) $504,352.11. Kathryn fails to account for the $240,000 (or more) of debt that appears outstanding and fails to explain cogently why the law firm circuitously returned to Kathryn $366,054.48 of the payment.

Third, Kathryn argues that "the remedy Regions may seek under [Section 726.108] has already occurred, i.e., Kathryn returned the subject funds to [the Kaplan entities]." (Doc. 134 at 5) That argument fails for several reasons. Under Section 726.109, a creditor may obtain a money judgment against the recipient of a fraudulent transfer for the lesser of the transfer's value or the amount necessary to satisfy the creditor's claims. If Regions proves that the transfers are actually or constructively fraudulent, Regions is entitled to a money judgment against Kathryn for the amount of the transfers. Also, nothing in Florida's fraudulent-transfer statute absolves a transferee of liability based on the purported repayment of a fraudulent transfer. *Cf. In re Davis*, 911 F.2d 560 (11th Cir. 1990) (holding that the fraud exception in the Bankruptcy Code bars the discharge of a fraudulent debt later repaid). Finally, the Kaplan parties fail to exclude the prospect that more than $200,000 of Kathryn's debt to the Kaplan entities remains unpaid.

Similarly, several factual disputes preclude summary judgment for either party on Regions' claims against MK Investing and MIKA, but one argument warrants brief attention. The Kaplan parties argue that the movement of an asset from MK Investing to MIKA is not a transfer because the asset remained in Marvin's IRA.

Under Section 726.102(14), a transfer means "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." As the magistrate judge correctly explained in this action, "the question [] is not whether the IRA parted with an asset[] but whether [MK Investing] parted with an asset." (Doc. 93 at 12) (italics omitted) In this instance, the movement of an asset from MK Investing to MIKA is a transfer.

## CONCLUSION

The motions (Docs. 130 and 134) for summary judgment on the fraudulent-transfer claims and the "mere continuation," "successor liability," and "de facto merger" claims are **DENIED**. The agreed motion (Doc. 129) to excuse Advanta and Mainstar from defending this action is **GRANTED**. The Kaplan parties' motion (Doc. 149) for leave to reply to Regions' response is **DENIED**.

The clerk is directed to set the action for a bench trial in **MAY 2018**. No later than **APRIL 25, 2018**, the Kaplan parties must submit a single memorandum no longer than twenty-five pages that proposes findings of fact and conclusions of law. No later than **APRIL 25, 2018**, Regions must submit a memorandum no longer than twenty-five pages that proposes findings of fact and conclusions of law.

For the remainder of this litigation, a memorandum and any other paper must use only Calisto MT, Century Schoolbook, or Georgia font — at least 13-point font in each instance. In the alternative, a paper may use 14-point Times New Roman font. The parties must two-space after a period. A party may include no more than

five footnotes in a paper, and a footnote may not exceed two lines.  Also, the parties must observe strictly the margin requirements of the Local Rules.  The failure to comply with this order will subject a party to sanction.

ORDERED in Tampa, Florida, on April 10, 2018.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE