UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**REGIONS BANK**, an Alabama
banking corporation,

    Plaintiff,

v.                                 Case No.: 8:16-cv-2867-T-23AAS

**MARVIN I. KAPLAN**, and individual;
et al.,

    Defendants.
_____/

### ORDER

Marvin Kaplan ("M. Kaplan"), Kathryn Kaplan ("K. Kaplan"), R1A Palms, LLC ("R1A Palms"), Triple Net Exchange, LLC ("TN Exchange"), MK Investing, LLC ("MK Investing"), BNK Smith, LLC ("BNK Smith"), and MIK Advanta, LLC ("MIK Advanta") (collectively, the "Kaplan Defendants"), seek permission to substantively amend the joint pretrial statement. (Doc. 178). The Kaplan Defendants also request leave to file a reply in further support of their motion to amend the joint pretrial statement. (Doc. 185). Regions Bank ("Regions") opposes both requests. (Docs. 183, 186).

**I.    BACKGROUND**

In this action (one of three litigated by these parties), Regions seeks damages for alleged fraudulent transfers from R1A Palms, TN Exchange, and BNK Smith to K. Kaplan. (Doc. 48). Critical to the instant motion, Regions also alleges that M. Kaplan restructured his IRA and moved assets from MK Investing to MIK Advanta to avoid paying Regions' judgment in the underlying action, *Regions Bank v. Marvin I. Kaplan, et al.*, No. 8:12-cv-1837-T-17MAP. (*Id.*).

Until now, there has been no dispute that: (1) MK Investing owned a partial interest in 785

1

Holdings, LLC ("785 Holdings") and transferred that interest to MIK Advanta; (2) MIK Advanta received additional funds from MK Investing valued at $273,898.08; and (3) the IRA moved $214,263.16 in cash received from MK Investing to MIK Advanta. M. Kaplan, MK Investing, and MIK Advanta admitted these facts in their respective pleadings and included these facts as stipulated in the original joint pretrial statement. (Docs. 67, 83, 84, 163).

With only a few weeks remaining before the trial of Regions' claims, the Kaplan Defendants request to remove these stipulated facts from the joint pretrial statement. (Doc. 178, pp. 3-4). In addition, the Kaplan Defendants seek to add an exhibit as support for their new set of facts. (*Id.* at p. 2). The Kaplan Defendants now assert that: (1) the IRA, not MK Investing, owned an interest in 785 Holdings; (2) MIK Advanta did *not* receive $273,898.08 in value from MK Investing; and (3) the IRA acquired MIK Advanta's units using $214,236.16 in cash.[1] (*Id.* at pp. 3-4). The court will separately address each proposed amendment.

### A. MK Investing's interest in 785 Holdings.

The Kaplan Defendants request to delete paragraph 17 of the joint pretrial statement. (Doc. 178, p. 3). Paragraph 17 states that "[o]n July 12, 2012, M[. Kaplan] caused to be formed 785 Holdings [], in which MK [Investing] owned a partial interest." (Doc. 162, ¶ 17). The Kaplan Defendants now assert that MK Investing did not actually own an interest in 785 Holdings, LLC. (Doc. 178, p. 3).

In their answers, M. Kaplan, MK Investing, and MIK Advanta "[a]dmitted that MK

---

[1] An April 30th order addressed other issues contained in the instant motion to amend the joint pretrial statement. (Doc. 182). Specifically, that order granted amendment as to the requests in paragraph 5(a), (c), and (d). (*Id.* at p. 1). The requests in paragraphs 5(b) and 6, remain at issue here. (*Id.* at pp. 3-4).

[Investing] maintained an ownership interest in 785 Holdings, LLC." (Docs. 67, 83, 84). This fact was also affirmed during the trial in the underlying action (Doc. 183, Exh. A, p. 3), and during the deposition of M. Kaplan in this action (Doc. 128, p. 161). In support of the requested amendment, the Kaplan Defendants rely on three documents from early discussions of the IRA restructuring. (*See* Doc. 183, Exhs. C, D, E). These documents were superseded by other versions and were never consummated. (*Id.*).

### B. MIK Advanta's receipt of $273,898.08 in funds from MK Investing.

The Kaplan Defendants request to delete paragraph 20, footnotes 14-15, from the joint pretrial statement. (Doc. 178, p. 3). Footnotes 14-15 respectively state, "MK [Investing] also transferred its interest in a TN [Exchange] note to MIK [Advanta]," and "M[. Kaplan], MK [Investing] and MIK [Advanta] admit MIK [Advanta] received 'funds' of $273,898.08." (Doc. 162, ¶ 20).

The Kaplan Defendants now assert that footnote 14 is not supported by the evidence in light of the ownership interests in 785 Holdings. (Doc. 178, p. 3). However, MK Investing's transfer of its $273,898.08 interest to MIK Advanta involved a transaction separate from the ownership interest in 785 Holdings. The only other evidence the Kaplan Defendants cite in support of this amendment is the IRA Annual Report from January 1, 2012 to December 1, 2016. (Doc. 183, Exh. P). That document reflects MIK Advanta's 2016 market value and certain administrative fees and disbursements. (*Id.*).

Concerning footnote 15, the Kaplan Defendants agree that a $273,898.08 transaction occurred, but dispute that it represented actual value or that actual "funds" were involved in the transfer. (Doc. 178, p. 3). The joint pretrial statement stipulates that "[t]he IRA assigned the

remaining value in MK [Investing] of $273,898.08 to MIK [Advanta]." (Doc. 162, ¶ 20). The second amended complaint specifically alleges that the IRA assigned the remaining 229,517.44 units of MK Investing (with a value of $273,898.08) to MIK Advanta. (Doc. 48, ¶ 27(d)). M. Kaplan, MK Investing, and MK Advanta's answers also admitted that MIK Advanta received "funds" of $273,898.08. (Docs. 67, 84, and 84, ¶ 27(d)). During M. Kaplan's deposition in this action, he agreed that the IRA moved a MK Investing asset worth $273,898.08 to MIK Advanta. (Doc. 128, pp. 156, 158).

### C. MK Investing's receipt of $214,236.16 in cash from MIK Advanta through the IRA.

The Kaplan Defendants request to delete paragraphs 21(b) and (c) of the joint pretrial statement. (Doc. 178, pp. 3-4). Those paragraph sub-sections, respectively, state that "[t]he IRA moved $214,263.16 in cash received from MK [Investing] to MIK [Advanta]," and "MK [Investing] assigned its units of 785 Holdings to MIK A[dvanta]." (Doc. 162).

For paragraph 21(b), the Kaplan Defendants contend it is more accurate to state that the IRA acquired MIK Advanta's units using $214,236.16 in cash. (Doc. 178, p. 3). In its second amended complaint, Regions alleged that "M. Kaplan's IRA transferred to MIK [Advanta] $214,263.16 in cash extracted from MK [Investing]." (Doc. 48, ¶ 27(b)). M. Kaplan, MK Investing, and MIK Advanta responded—"Denied that a transfer occurred." (Docs, 67, 83, and 84, ¶ 27(b)). At a deposition in this action, M. Kaplan clarified that this denial was merely focused on the words "transfer" and "extracted," and he otherwise admitted the allegation. (Doc. 128, pp. 165-66).

For paragraph 21(c), the Kaplan Defendants do not dispute that an assignment occurred; however, because the Kaplan Defendants now assert that MK Investing did not actually own an

interest in 785 Holdings, the legal effect of the purported assignment is a disputed issue. (Doc. 178, p. 4). In their answers, however, M. Kaplan, MK Investing, and MIK Advanta "[a]dmitted that MK [Investing] maintained an ownership interest in 785 Holdings, LLC." (Docs. 67, 83, 84).

## II. ANALYSIS

### A. Motion to Amend Joint Pretrial Statement

Pretrial stipulations promote judicial economy by dispensing with matters that are not at issue. *Carnegie Steel Co. v. Cambria Iron Co.*, 185 U.S. 403. When a party discovers that it has erroneously stipulated to facts or excluded critical information, the trial court has broad discretion to set aside the prior stipulations. *Morrison v. Genuine Parts Co.*, 828 F.2d 708, 709, 11th Cir. 1987). Although the court has discretion to grant this relief, the relevant local rule instructs that "[t]he pretrial statement and the pretrial order, if any, will control the course of the trial and may not be amended except by order of the Court in furtherance of justice." Local Rule 3.06(e), M.D. Fla. Therefore, the Kaplan Defendants must show the previously stipulated fact is clearly erroneous, and manifest injustice would occur if the amendment were not made. *Morrison*, 828 F.2d at 710*; Sam Galloway Ford, Inc. v. Univ. Underwriters Ins. Co.*, 793 F. Supp. 1079, 1082 (M.D. Fla. 1992). The amendment should not be permitted if Regions would be unfairly prejudiced. *Sam Galloway Ford, Inc.*, 793 F. Supp. at 1082.

M. Kaplan, MK Investing, and MIK Advanta admitted the stipulated facts at issue in their answers to Regions' second amended complaint, and in testimony throughout this and the underlying litigation. (Docs. 63, 83, 84, 128). Thus, amending the joint pretrial statement would not only impact facts that M. Kaplan, MK Investing, and MIK Advanta have stipulated in a joint pretrial statement, but also facts that M. Kaplan, MK Investing, and MIK Advanta admitted as true

5

in their pleadings. The Kaplan Defendants have not demonstrated that the stipulated facts in the joint pretrial statement are clearly erroneous and that failure to relieve them from the joint pretrial statement would result in manifest injustice. In addition, Regions would be unduly prejudiced if the proposed amendments were permitted on the eve of trial.

The Kaplan Defendants cite one case in support of their request to amend the joint pretrial statement, *Keen v. Bovie Med. Corp.*, No. 8:12-cv-305-T-24EAJ, 2013 WL 12157851 (M.D. Fla. 2013). In *Keen*, the court permitted the defendant, over the plaintiff's objection, to amend the pretrial statement to add four invoices to its exhibit list. *Id.* at *1. The court found the additional exhibits were no surprise and did not unfairly prejudice the plaintiff because the four invoices were attached to the defendant's summary judgment filings and were already listed as trial exhibits by the plaintiff. *Id.* On the contrary, the Kaplans Defendants seek to substantively change matters that they not only previously stipulated over six weeks ago in preparation for trial, but also they admitted in their pleadings over a year ago. Permitting these proposed amendments on the eve of trial would not further justice and would unduly prejudice Regions.

### B. Motion for Leave to File a Reply

In this district, "[n]o party shall file any reply or further memorandum directed to the motion or response . . . unless the Court grants leave." Local Rule 3.01(a), M.D. Fla. "The purpose of a reply brief is to rebut any new law or facts contained in the opposition's response to a request for relief before the Court." *In re Fiddler's Creek, LLC*, No. 2:14-cv-379-FtM-29CM, 2015 WL 4470093, at *2 (M.D. Fla. July 21, 2015) (quotation marks and citation omitted). The party seeking to file a reply must demonstrate good cause, and "the Court will not grant leave to file a reply brief unless the reply will benefit the Court's resolution of the pending motion." *Id.*

6

The Kaplan Defendants do not seek to rebut new law or facts presented in Regions' response to the underlying motion. Instead, the Kaplan Defendants seeks to address the arguments made by Regions in its response. (Doc. 185, p. 2). The Kaplan Defendants' proposed reply would not be beneficial to the court's resolution of the issues presented in the underlying motion.

**III. CONCLUSION**

Accordingly, for the reasons stated herein, it is **ORDERED**:

(1) The court previously allowed amendment to the joint pretrial statement only as to the requests in paragraph 5(a), (c), and (d) of the Kaplan Parties' Motion to Amend Joint Pretrial Statement Exhibit List and Factual Stipulations (Doc. 178). (Doc. 182, ¶ 2). In all other respects, the motion is **DENIED**.

(2) Kaplan Parties' Motion for Leave to File a Reply (Doc. 185) is **DENIED**.

**ORDERED** in Tampa, Florida on this 14th day of May, 2018.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge